CITY OF BLOOMFIELD HILLS v ZIEGELMAN

Docket No. 50796. Submitted June 15, 1981, at Detroit.—Decided
October 20, 1981. Leave to appeal applied for.

Norman and Monica Ziegelman constructed a home on a lot in
the City of Bloomfield Hills and later applied for a permit to
build a backyard tennis court. The permit was refused on the
ground that the tennis court would violate the zoning ordi-·
nance prohibiting any structure within 35 feet of the rear
property line. The Ziegelmans then sought a variance from the
zoning board of appeals. The variance was denied. The city
then discovered that the Ziegelmans were laying gravel in the
shape of a tennis court and commenced suit in Oakland Circuit
Court seeking a temporary restraining order and a permanent
injunction. The temporary restraining order was issued, Ber-
nard Kaufman, J. Defendants filed a counterclaim for declara-
tory judgment alleging that the tennis court they planned to
construct was not a "structure" prohibited by the zoning ordi-
nance; that the ordinance definition of "structure" was uncon-
stitutionally vague and unreasonable; that a tennis court is an
"accessory structure" subject to a lesser set-back requirement
under other provisions of the ordinance; that defendants were
denied equal protection because plaintiff selectively enforced
the ordinance; and that the court should determine if any of six
alternative types of tennis courts other than that planned by
defendants were "structures" within the meaning of the ordi-
nance. Defendants filed a motion for summary judgment on the

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Zoning and Planning § 7.
   Validity and construction of statutory notice requirements prereq-
   uisite to adoption or amendment of zoning ordinance or regula-
   tion. 96 ALR2d 449.
[2] 82 Am Jur 2d, Zoning and Planning §§ 7-10, 15.
[3, 6] 82 Am Jur 2d, Zoning and Planning § 15.
[4] 22 Am Jur 2d, Declaratory Judgments §§ 10, 11.
[5] 22 Am Jur 2d, Declaratory Judgments § 8.
[7] 82 Am Jur 2d, Zoning and Planning § 25.
[8] 82 Am Jur 2d, Zoning and Planning § 27.
[9] 82 Am Jur 2d, Zoning and Planning § 273.
[10] 5 Am Jur 2d, Appeal and Error § 609.

first two issues. The motion was denied, George H. LaPlata, J. Fernando N. Salazar, M.D., an adjoining neighbor of the defendants, was then permitted to intervene as a plaintiff in opposition to the building of the tennis court. The trial court denied defendant's counterclaim in its entirety, finding that the zoning board of appeals did not abuse its discretion in denying the variance; refused to render a declaratory judgment as to alternative types of tennis courts; and found that its predecessor had found tennis courts to be "structures", that the zoning ordinance was constitutionally valid, and that plaintiffs were entitled to a permanent injunction restraining defendants from constructing a tennis court in the rear 35-foot set-back area unless prior approval was obtained in conformity with the zoning ordinance requirements, George H. LaPlata, J. Defendants thereafter secured a permit to build a practice tennis court containing only a grassy area within the set-back area. Plaintiffs, upon discovering that defendants built a tennis court with a porous type limestone clay surface covered with a layer of topsoil and grass, sought an order holding defendants in contempt of court. Defendants sought reconsideration of the court's previous findings. The motion for reconsideration was denied, defendant Norman Ziegelman was found to be in contempt of court, and a motion by the defendants to stay the proceedings was denied, George H. LaPlata, J. The Court of Appeals granted a stay and defendants now appeal from the earlier judgment of the trial court and all subsequent orders issued by it. *Held:*

1. The trial court did not err in upholding the determination by Judge Kaufman in the hearing on defendants' motion for summary judgment.

2. The trial court erred in refusing to rule on the alternative proposals sought by defendants in their counterclaim for declaratory judgment. The error, however, was harmless and does not justify a reversal.

3. There was no error requiring reversal in the trial court's refusal to deal with the constitutional issue as applied to the so-called clay surface tennis court.

4. Defendants failed to prove that the zoning ordinance at issue is an arbitrary and unreasonable restriction upon the use of their property.

5. The inability of defendants to use their tennis court has not precluded the use of their property for all purposes for which it is reasonably adapted.

6. Defendants were not denied due process either as to the

trial court's refusal to hear further testimony that a tennis court is not a "structure" or its refusal to grant a hearing on the constitutionality of the zoning ordinance as applied to a clay surfaced tennis court.

7. No evidence was submitted at the trial level on the issue of selective enforcement. Defendants are precluded from now raising the issue on appeal.

8. The determination of the trial court is affirmed and the stay granted by the Court of Appeals is lifted effective 20 days after the release date of this opinion. Defendants shall be given a hearing on the contempt question consistent with these findings if plaintiffs claim they are still in violation of the trial court's permanent injunctive order.

Affirmed.

1. ZONING — CITIES — STATUTES.

A city's zoning authority is derived from the city and village zoning enabling act (MCL 125.581 *et seq.;* MSA 5.2931 *et seq.).*

2. ZONING — CITIES — STATUTES.

The statute which grants zoning authority to cities does not grant unlimited authority to restrict all activities or objects; zoning restrictions must be limited to buildings or structures and must bear a reasonable relationship to the city's police powers (MCL 125.581 *et seq.;* MSA 5.2931 *et seq.).*

3. ZONING — ORDINANCES — CONSTITUTIONAL LAW.

A zoning ordinance is not unconstitutional unless it is clearly arbitrary and unreasonable with no substantial relation to the public health, safety, morals or general welfare.

4. COURTS — CIRCUIT COURTS — DECLARATORY JUDGMENTS — "AC-TUAL CONTROVERSIES" — COURT RULES.

Circuit courts are vested with the power to declare the legal rights of parties in cases of "actual controversy"; an "actual controversy" exists where a declaratory judgment is necessary to guide a litigant's future conduct in order to preserve his legal rights (GCR 1963, 521.1).

5. JUDGMENTS — DECLARATORY JUDGMENT RULE — COURT RULES.

The declaratory judgment rule, by which circuit courts are vested with the power to declare the legal rights of parties in cases of "actual controversy", was intended to be liberally construed to provide a broad, flexible remedy to increase access to the court (GCR 1963, 521.1).

6. ZONING — ORDINANCES — CONSTITUTIONAL LAW.

A zoning ordinance may be successfully attacked as being unconstitutional by (1) showing that there is no reasonable governmental interest being advanced by the zoning classification itself, or (2) showing that the ordinance is unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

7. ZONING — ORDINANCES — PRESUMPTION OF VALIDITY.

A zoning ordinance is clothed with a presumption of validity.

8. ZONING — ORDINANCES — BURDEN OF PROOF — REASONABLENESS.

It is the burden of the party attacking a zoning ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.

9. ZONING — ORDINANCES — REASONABLENESS.

An aggrieved property owner, to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted.

10. APPEAL — EQUITY — FINDINGS OF FACT.

Considerable weight is given to the findings of the trial court in appeals involving equity cases.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *William P. Hampton),* for the City of Bloomfield Hills.

*Richard D. Rattner,* for intervening-plaintiff Salazar.

*Hardig, Goetz, Heath & Merritt* (by *Joseph L. Hardig, Jr.,* and *James L. Allen),* for defendants.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and E. E. BORRADAILE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

E. E. Borradaile, J. This case involves an architect who constructed a home on a 1.14-acre lot owned by him and his wife in the City of Bloomfield Hills and later applied for a permit to build a backyard tennis court. The city disapproved the tennis court plans, basing its refusal on the fact that the tennis court would violate the zoning ordinance which prohibits any structure within 35 feet of the rear property line.

Defendants sought a rear yard variance but the zoning board of appeals denied the request, finding that the word "building" included the word "structure" and that a building or structure included any part thereof. The board also found that: (1) reasonable use could be made of the lot without the variance; (2) petitioner had not demonstrated that because of the zoning ordinance and size and shape of the lot in question reasonable use of the lot could not be made without the variance; (3) nothing unique about the particular lot justified a variance; (4) petitioner had advance knowledge of the legal set-back requirements but chose to place the residence in its location nevertheless; and (5) variance was not justified where conditions were created by the lot owner's own acts rather than by circumstances relating peculiarly to the land itself. Under the authority of *Puritan-Greenfield Improvement Ass'n v Leo,* 7 Mich App 659; 153 NW2d 162 (1967), the appeals board denied the application.

Shortly after the denial, the city discovered that defendants were laying gravel in the shape of a tennis court and commenced suit seeking a temporary restraining order and a permanent injunction. The temporary restraining order was issued, subsequently dissolved and then reinstated some months later.

Defendants filed a counterclaim for declaratory judgment alleging that a tennis court of asphalt with fence backstops was not a "structure" within the provision of the city zoning ordinance; that the ordinance's definition of "structure" was unconstitutionally vague and unreasonable; that a tennis court is an "accessory structure" subject to a lesser set-back requirement under other provisions of the ordinance; that defendants were denied equal protection because plaintiff selectively enforced the ordinance; and, by later amendment, that the court should determine if any of six alternative types of tennis courts other than that submitted were "structures" within the ordinance.

Defendants filed a motion for summary judgment on the first two issues as to whether a tennis court is a "structure" and whether the zoning ordinance provision defining structures was unconstitutionally vague. The trial court denied the motion on both counts.

Intervening plaintiff, an adjoining neighbor to defendants, was permitted to intervene in opposition to the building of the tennis court in violation of the zoning ordinance. At a bench trial on the matter, much testimony was introduced as to whether the zoning board of appeals abused its discretion in denying the variance, an issue not involved in the present appeal. No evidence was introduced as to selective enforcement. The trial court, presided over by a different judge than the one denying the above-noted motion for summary judgment, initially refused to allow evidence as to whether tennis courts are structures. However, later in the trial it permitted expert witnesses to testify at length as to whether tennis courts are structures and as to the purposes of a set-back requirement for structures. Defendants' expert,

while disagreeing with plaintiff's expert that tennis courts are structures, agreed that set-back requirements for structures serve the purposes of providing privacy, open space and reduction of run-off of surface water.

The trial court, in dismissing the counterclaim in its entirety, found that the zoning board of appeals did not abuse its discretion in denying the variance, refused to render a declaratory judgment as to alternative types of tennis courts, found that its predecessor had found tennis courts to be structures and that the zoning ordinance was constitutionally valid and concluded that plaintiff was entitled to a permanent injunction restraining defendant from constructing a tennis court in the rear 35-foot set-back area unless prior approval was obtained in conformity with the zoning ordinance requirements.

After the judgment was entered on March 12, 1980, defendant secured a permit to build a practice tennis court containing only a grassy area within the set-back area. Shortly thereafter, defendants built a tennis court with a porous type limestone clay surface, coming within 10 feet of the property line, within the set-back area. Defendants placed a layer of topsoil and grass but put in no fences. Plaintiff, on discovering that defendants had put a layer of clay beneath the grass, sought an order holding defendants in contempt of court.

Defendants' new attorney sought reconsideration of the court's previous findings and admitted that, as to the type of tennis court originally proposed by defendants, the constitutional question had been abandoned. Apparently, the motion for rehearing was filed September 5, 1980, being dated August 29, 1980, but long after the time for making a motion for new trial had expired. See GCR

1963, 527.2. Defendants by the motion sought an evidentiary hearing limited to whether the city zoning ordinance constituted an unreasonable exercise of the police power as it related to the clay surfaced tennis court for which defendants were found guilty of contempt of the court's order of March 12, 1980.

The trial court, by an order filed September 19, 1980, denied defendants' motion for reconsideration, found defendant Norman Ziegelman in contempt and required him to purge himself or be jailed for 60 days, and also denied a motion staying proceedings. This Court, on September 22, 1980, granted a stay.

On April 1, 1980, defendants filed a claim of appeal relating to the March 12, 1980, judgment, and on September 11, 1980, filed a claim of appeal as to all subsequent orders in the case. They raise three questions: (1) is a tennis court a "building" or "structure" subject to the City of Bloomfield Hills zoning ordinance set-back requirements; (2) were they denied due process when the trial court refused to allow further testimony that a tennis court was not a structure when the trial judge's predecessor had denied their motion for summary judgment; and (3) were they denied due process when denied a hearing on the constitutionality of the zoning ordinance as applied to a clay surfaced tennis court?

As defendants note, a city's zoning authority is derived from the city and village zoning enabling act, MCL 125.581 *et seq.;* MSA 5.2931 *et seq.* The statute does not grant unlimited authority to restrict all activities or objects; zoning restrictions must be limited to "buildings" or "structures" and must bear a reasonable relationship to the city's police powers.

In *Gorieb v Fox,* 274 US 603; 47 S Ct 675; 71 L
Ed 1228 (1927), the Court, in applying the stan-
dard set forth in *Village of Euclid v Ambler Realty
Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303 (1926),
holding that an ordinance was not unconstitu-
tional unless clearly arbitrary and unreasonable
with no substantial relation to the public health,
safety, morals or general welfare, found that set-
back ordinances were constitutional. Set-back ordi-
nances were upheld in Michigan in *McClain v
Hazel Park,* 357 Mich 459; 98 NW2d 560 (1959),
and *Gordon v City of Warren Planning & Urban
Renewal Comm,* 29 Mich App 309; 185 NW2d 61
(1971).

Article XIV, § 1400 of the zoning ordinance
provides that no building can be erected in the
rear 35 feet of a property in A-3 (one family
dwelling district) zones. Article II, § 201(8) defines
"building" as "a structure that encloses space
intended for the occupancy of persons or animals
or the storage of goods and chattels for purpose of
residence, recreation, services and economic enter-
prises, which structure shall have a roof supported
by columns or walls". Article II, § 201(60) defines
"structure" as "anything constructed or erected,
the use of which requires location on the ground
or attachment to something having location on the
ground". Article XVI, § 1612 states in part: "Fur-
ther, any walk, terrace, or other pavement serving
a like function, and not in excess of nine (9) inches
above the grade upon which placed, shall for the
purpose of this Ordinance, not be considered a
structure and shall be permitted in any required
yard."

Judge Bernard Kaufman, whose untimely death
caused trial of the case to be reassigned to Judge
George LaPlata, had ruled on defendants' motion

for summary judgment that "structure is * * * any construction or any production or piece of work artificially built up or composed of parts joined together in some definite manner", citing *C K Eddy & Sons v Tierney,* 276 Mich 333; 267 NW 852 (1936). The *Eddy* case dealt with concrete islands and pumps, driveways, gasoline tanks and storage space as a part of a public garage. The *Eddy* Court cited *Mendoza v Central Forest Co,* 37 Cal App 289; 174 P 359 (1918), quoting the definition of "structure" from 27 Am & Eng Encyclopedia of Law (2d ed), p 191, as follows:

"In the broadest sense a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction."

See *People v Samuel Lee,* 66 Mich App 5, 8; 238 NW2d 397 (1975).

In *Flynn v New York, W & B R Co,* 218 NY 140; 112 NE 913 (1916), Justice Pound of the New York Court of Appeals, in dealing with restrictive covenants and whether a railway line was a "building or structure" within its terms, stated:

"A building or a structure is, in the widest sense, anything constructed, *i.e.,* erected by art and fixed upon or in the soil, composed of different pieces connected together and designed for permanent use in the position in which it is so fixed." *Id.,* 147.

There apparently has been no definition of tennis courts as structures in Michigan. Defendants cite *Williams v Inspector of Buildings of Belmont,* 341 Mass 188; 168 NE2d 257 (1960), *Jones v Zoning Hearing Board,* 7 Pa Commw Ct 284; 298 A2d 664 (1972), *Crane v Bitterman,* 55 App Div 2d 669;

390 NYS2d 179 (1976), *Parrish v Richards,* 8 Utah 2d 419; 336 P2d 122 (1959), *Klein v Lower Macungie Twp,* 39 Pa Commw Ct 81; 395 A2d 609 (1978), and *Kitrell v Board of Adjustment of the City of Hastings,* 201 Neb 130; 266 NW2d 724 (1978), for the proposition that tennis courts are not structures subject to certain zoning ordinances.

The courts in *Williams, Jones* and *Klein* all base their conclusions on the language of the particular ordinances before them. In each case, the language differed substantially from the language before us. *Crane* and *Kitrell* held that tennis courts were permissible "accessory uses" and did not even consider whether they were structures. In *Parrish,* the court dealt with a restrictive covenant where "structure" seemed to be limited by the terms "garages and dwellings". The court concluded that the restriction was drafted to prevent obstructions of view.

In the case at bar, the city planner testified at trial that the set-back requirements were developed to guarantee a privacy buffer between properties, to reduce noise and to reduce problems of run-off and drainage.

Plaintiff city cites *Town of Atherton v Templeton,* 198 Cal App 2d 146; 17 Cal Rptr 680 (1961), in which the Court construed a definition of "structure" similar to the provision in this case:

" 'Anything constructed or erected, including pools and housing for incidental equipment thereto, the use of which requires location on the ground or attached to something having location on the ground.' " *Id.,* 149.

The court found that a tennis court fell within that definition.

Defendants point out that the California court dealt only with the sides and backstop and did not

deal with the playing surface as a structure. We fail to see the distinction. In the zoning ordinance in our case, the only surface excluded is pavement as access.

At trial, both plaintiff's city planner and defendants' experts acknowledged that tennis courts were not "accessory uses" under the zoning ordinance. Defendants argue that they were not permitted to challenge the earlier ruling as to whether a tennis court was a structure, but it might be noted that after the trial judge's initial ruling, both sides produced testimony as to whether a tennis court is, in fact, a structure, and the purposes of a 35-foot set-back requirement for structures.

Plaintiff city's expert testified that he was its city planner and had drafted the zoning ordinance. He opined that a tennis court was a structure and, except for a grass court with no fence and no hard surfaces, all of defendants' proposed alternative types of tennis courts were structures. Defendants' expert testified that none of the proposed tennis courts were structures, but admitted on cross-examination that a "structure" includes temporary as well as permanent items. He also conceded that set-back requirements for structures often serve the purposes of providing privacy and open space and the reduction of run-off.

We are satisfied that the city's definition of "structure" is consistent with the definition used in the *Eddy* case, *supra,* as well as the definitions adopted by the New York and California courts. The trial judge did not err in upholding the determination by his predecessor in the hearing on defendants' motion for summary judgment.

We do believe the court erred in refusing to rule on the alternative proposals sought by defendants

in their counterclaim for declaratory judgment. GCR 1963, 521.1 vests circuit courts with the power to declare the legal rights of parties in cases of "actual controversy".[1] The declaratory judgment rule was intended to be liberally construed to provide a broad, flexible remedy to increase access to the court. In the usual case, an actual controversy exists where a declaratory judgment is necessary to guide a litigant's future conduct in order to preserve his legal rights. *Shavers v Attorney General,* 402 Mich 554, 588; 267 NW2d 72 (1978). In view of the litigious nature of this case, it would have been better to resolve the issue at the time of trial. As the trial judge noted in his opinion, however, the defendants were not to construct "a tennis court in the rear 35-foot set-back requirement in the back yard of Defendant's *[sic]* property, unless prior approval is obtained in conformity with the ordinance requirements of the city, or until the further order of this court".

In view of our finding as to the meaning of "structure" as it applies to tennis courts, whether or not posts and nets or other attachments are included, we believe the trial judge's ruling on the alternative types of tennis courts is harmless error and does not justify a reversal.

In the later hearing, after defendants were found guilty of contempt for violation of the court's order, the trial court concededly refused to deal with the constitutional issue as applied to the so-called clay surface tennis court. There is no reversible error because we find both from our discussion of the definition of "structure" and from

[1] GCR 1963, 521.1 provides: ".1 Power to Make. In a case of actual controversy within its jurisdiction, any circuit court of this state may declare the rights and other legal relations of any interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

a review of the record that the set-back require-
ments are constitutional as applied to any of de-
fendants' alternatives.

In *Kirk v Tyrone Twp,* 398 Mich 429; 247 NW2d
848 (1976), the Supreme Court, relying on its
previous decision in *Kropf v Sterling Heights,* 391
Mich 139; 215 NW2d 179 (1974), set forth the
standard for determining the constitutionality of a
zoning ordinance:

"The important principles require that for an ordi-
nance to be successfully challenged plaintiffs prove:
" '[F]irst, that there is no reasonable governmental
interest being advanced by the present zoning classifica-
tion itself * * * or
" '[S]econdly, that an ordinance may be unreasonable
because of the purely arbitrary, capricious and un-
founded exclusion of other types of legitimate land use
from the area in question.' 391 Mich 139, 158." 398
Mich 429, 439.

The ordinance is clothed with a presumption of
validity. *Brae Burn, Inc v Bloomfield Hills,* 350
Mich 425; 86 NW2d 166 (1957). It is the burden of
the party attacking the ordinance to prove affirma-
tively that the ordinance is an arbitrary and un-
reasonable restriction upon the owner's use of his
property. " 'It must appear that the clause at-
tacked is an arbitrary fiat, a whimsical *ipse dixit,*
and that there is no room for a legitimate differ-
ence of opinion concerning its reasonableness.' "
*Kropf, supra,* 162, quoting *Brae Burn, Inc, supra.*
An owner must show that if the ordinance is
enforced, the consequent restrictions on his prop-
erty preclude its use for any purposes to which it
is reasonably adapted. *Kropf, supra,* 162-163. Con-
siderable weight is given to the findings of the
trial court in equity cases. *Kirk, supra,* 439-440.

Defendants have failed to prove that the ordinance is an arbitrary and unreasonable restriction upon the use of their property. Experts for both sides at trial testified that set-back requirements serve the purposes of preventing encroachment on neighbors' privacy, reducing the potential for noise and avoiding problems of surface water run-off. Even if defendants could prove that any of their proposed tennis court surfaces would avoid surface water run-off problems, the privacy and noise considerations still remain. Applying the *Kropf* and *Kirk* tests, the set-back requirement is not an arbitrary and unreasonable restriction on the use of their property and, since the ordinance advances several legitimate interests, it is not an arbitrary fiat and there is room for a legitimate difference of opinion as to its reasonableness.

Very clearly, the inability of defendants to use their tennis court has not precluded the use of their property for any purpose for which it is reasonably adapted. As the zoning board of appeals noted, defendants knew when they selected the site for their house that inadequate space was being left for a tennis court but they built there in spite of that fact. The ordinance provides for variances where a mistake is unwittingly made. In this case, the board, in a reasonable exercise of its discretion, found against defendants.

We are satisfied that defendants were not denied due process either as to the trial court's refusal to hear further testimony that a tennis court was not a structure or its refusal to grant a hearing on the constitutionality of the zoning ordinance as applied to a clay surfaced tennis court.

In order to dispose of this appeal, we must also deal with other issues raised by defendants. Defendants at the hearing on reconsideration sought to

raise the issue of selective enforcement. As noted earlier in this opinion, no evidence at trial was submitted on this issue, thus defendants are precluded from raising it now on appeal.

Though we have indicated that the zoning board of appeals did not abuse its discretion in denying a variance, that issue is not before us on appeal. At oral argument, defense counsel admitted they had another application for variance pending before the zoning board of appeals.

On appeal, defendants raise for the first time the question of swimming pools being treated more liberally than tennis courts. That issue should have been raised at the trial level and not for the first time on appeal.

The determination of the trial court is affirmed and the stay granted by this Court is lifted effective 20 days after the release date of this opinion. Defendants shall forthwith thereafter be given a hearing on the contempt question consistent with our findings if plaintiffs claim they are still in violation of the trial court's permanent injunctive order.

Affirmed.