875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carl P. EASLICK, Plaintiff-Appellant,
v.
CITY OF LANSING, Defendant-Appellee.
 No. 88-1534.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1989.
 
 Before BOYLE F. MARTIN, Jr. and RYAN, Circuit Judges, and GEORGE C. SMITH*, District Judge.
 PER CURIAM.
 
 
 1
 The dispute in this case arose when Easlick was prohibited from placing his satellite dish antenna in the front yard of his home pursuant to a City of Lansing zoning ordinance. This appeal from a summary judgment raises questions of federal preemption of local ordinances and numerous constitutional issues.
 
 
 2
 Easlick constructed a satellite dish antenna on his property in October, 1986. The antenna was located approximately 33- 1/2 feet from the front lot line of his home in Lansing, Michigan. The satellite dish is several feet in diameter and constructed of a black wire mesh. It is a receiver only antenna. To receive transmission signals from an orbiting earth satellite a dish antenna must have an unobstructed line of reception to the transmitting satellite. Easlick's dish antenna would be ineffective if it were placed further back from Easlick's front lot line or in his back yard, because his line of reception would be blocked either by his house or by trees.
 
 
 3
 The present position of Easlick's dish antenna violates Lansing City Ordinance 1248.03(b)(5). This ordinance provides in part that "[e]ach accessory structure shall not be located closer than sixty feet from the front lot line, nor closer than three feet to a rear or side lot line, unless attached to the structure containing the principal use." The satellite dish antenna clearly falls within the city ordinance definition of "accessory structure," section 1240.03(2), because it is a "structure," section 1240.03(155), with an, "accessory use," section 1240.03(3).
 
 
 4
 After construction of the antenna, Easlick applied to the Board of Zoning Appeals for a variance from ordinance 1248.03(b)(5). A variance was denied and Easlick subsequently brought this law suit.
 
 
 5
 In his complaint, Easlick asserted (1) that Lansing's zoning ordinance was preempted by a Federal Communication Commisssion regulation, 47 C.F.R. Sec. 25.104; (2) that Lansing's ordinance denied Easlick his first amendment right of acess to free speech; (3) that Lansings ordinance improperly discriminates between satellite receive-only antennas and other communications services such as cable television in violation of the equal protection clause; (4) that Lansing's ordinance denied him valuable property rights without due process of law or just compensation.
 
 
 6
 The district court granted summary judgment, upon its own motion, in favor of Lansing following briefing on the constitutional issues and oral argument. The court found that the Federal Communications Commission has the power to preempt local zoning laws regulating antennas entirely. The court found, however, the Commission's rule, 47 C.F.R. Sec. 25.104, was a rule of limited preemption and that Lansing's ordinance fit within the rule's own exceptions. The court also found that the ordinance did not violate the equal protection clause by distinguishing cable television facilities from satellite dish antennas. Furthermore, the court asserted that the rule did not constitute a deprivation of property without due process.
 
 
 7
 With regard to Easlick's first amendment claims, the court found that Lansing's zoning ordinance was a "content neutral" regulation. Young v. American Mini Inc., 427 U.S. 50 (1976). While the ordinance was found to impose an incidental burden on speech, the court also found that it was proper exercise of the police power under the four part test announced in United States v. O'Brien, 391 U.S. 367, 377 (1968). The ordinance (1) was within the limits of the city's governmental power, (2) furthered a substantial governmental interest, (3) which was unrelated to the suppression of free expression, (4) imposed a restriction no greater than was necessary to further the governmental interest. Id. Finally the court found that the ordinance constituted a reasonable "time, place and manner" restriction under Young.
 
 
 8
 Easlick makes several arguments, none of which is at all persuasive. First, he argues that the Federal Communication Commission's regulation preempts the City of Lansing's zoning ordinance. The Commission's regulation preempts those state and local regulations which "differentiate between satellite receive-only antennas and other types of antenna facilities." 47 C.F.R. Sec. 25.104. Easlick suggests that Lansing's ordinance discriminates between satellite antennas, like his, and cable television facilities. The City of Lansing, however, correctly argues that the Commission expressly decided to exclude regulations governing cable facilities from this Commission ruling. 51 Fed.Reg. 5519, 5523 (1986). This distinction seems to be entirely rational. Moreover the district court found that "cable is not a structure" within the meaning of the Lansing Planning and Zoning Code. Contrary to Easlick's assertions, the Lansing ordinance does not "single out" satellite dish antennas for different treatment, rather, the ordinance applies to an infinite variety of structures such as doghouses, swing-sets, storage sheds, radio antennas, playhouses, etc. This feature clearly distinguished the Lansing city ordinance from that found in Van Meter v. Township of Maplewood, 696 F.Supp. 1024 (D.N.J.1988). The ordinance in that case was clearly designed to prohibit satellite dish antenna on its face. Furthermore, the Lansing ordinance comes within the F.C.C. rule's own exceptions to the preemption. The ordinance has "a reasonable and clearly defined health safety [and] aesthetic objective." 47 C.F.R. Sec. 25.104(a). These objectives include traffic safety, light, ventilation, fire protection and aesthetic considerations. See McClain v. City of Hazel Park, 357 Mich. 459, 98 N.W.2d 560 (1959) (commenting on the governmental interests present in zoning set back provisions).
 
 
 9
 Easlick also argues that the city zoning ordinance violates his first amendment right to free speech. He argues that he has a first amendment right to receive satellite transmissions and that the city's ordinance restricts access to these transmissions on the basis of their content. The city correctly argues that the ordinance places no more than an incidental burden on speech, a burden which is content neutral. The Supreme Court has held that " 'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." City of Renton v. Playtime Theaters Inc., 475 U.S. 41, 47 (1986). We believe the city ordinance satisfies this general rule. The Supreme Court has long recognized that setback zoning requirements further important or substantial governmental interests. See e.g. Gorieb v. Fox, 274 U.S. 603, 609 (1927); Village of Euclid v. Amber Realty Co., 272 U.S. 365 (1926).
 
 
 10
 Easlick also argues that the district court was without authority to grant summary judgment in the case without motion by one of the parties. This argument contradicts the law of this circuit. See Kistner v. Califano, 579 F.2d 1004, 1006 (6th Cir.1978). A court may grant summary judgment sua sponte if it believes the case is ready for summary disposition and if it gives the party against whom judgment will be granted advance notice and adequate opportunity to show why summary judgment should not be granted. Easlick was provided with notice and opportunity in this case. Furthermore, "[t]he party against whom sua sponte summary judgment has improperly been entered must ... demonstrate prejudice in order to obtain relief on appeal." Yashon v. Gregory, 737 F.2d 547, 552 (6th Cir.). Easlick has failed to make any showing of prejudice in this case.
 
 
 11
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable George C. Smith, United States District Judge for the Southern District of Ohio, sitting by designation